IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:08cr221 |
| v. | : | (Judge Munley) |
| JOSEPH P. DONAHUE, Defendant | : | |

## MEMORANDUM

Before the court for disposition is Defendant Joseph P. Donahue's motion to suppress. The matter has been fully briefed and an evidentiary hearing was held on February 5, 2010. The motion is thus ripe for disposition.

**Background**

The United States of America (hereinafter "government") has filed a sixteen-count Second Superceding Indictment against Defendant Joseph P. Donahue (hereinafter "defendant"). The indictment contains charges of bank fraud, credit card fraud, false statements to the government and money laundering. During the investigation into this matter, agents of the Federal Bureau of Investigation visited defendant's place of employment on August 10, 2005 and spoke with him. The defendant seeks the suppression of any statements made by the defendant on that day.

**Discussion**

The Supreme Court has held that the Self-Incrimination Clause of the Fifth Amendment "[bars] the introduction in federal cases of involuntary confessions made in response to custodial interrogation." Withrow v. Williams, 507 U.S. 680, 688 (1993). For incriminating statements elicited from a defendant during a custodial interrogation to be admissible, law enforcement officers must first inform suspects that (1) they have the right to remain silent; (2) their statements may be used against them at trial; (3)

they have the right to the presence of an attorney during questioning; and (4) if they cannot afford an attorney, one will be appointed for them. Miranda v. Arizona, 384 U.S. 436, 478-79 (1966).  The parties agree that the government did not advise the defendant of these rights on the date in question.  Therefore, to be admissible the statements must not have been elicited during a custodial interrogation.  The court's task is to determine whether the defendant was subject to a custodial interrogation.

"[C]ustodial interrogation" is "'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" Oregon v. Mathiason, 429 U.S. 492, 494 (1977) (quoting Miranda, 384 U.S. at 444).  To determine whether a suspect is in custody, we examine "how a reasonable man in the suspect's position would have understood his situation." Berkemer v. McCarty, 468 U.S. 420, 442 (1984).  The Third Circuit Court of Appeals has explained that: "For a person to be in custody when he has not been arrested, something must be said or done by the authorities, either in their manner of approach or in the tone or extent of their questioning, which indicates that they would not have heeded a request to depart or to allow the suspect to do so. " United States v. Willaman, 437 F.3d 354, 359 (3d Cir. 2006) (internal quotation marks and citations omitted).  Thus, the court has several factors to consider in determining whether a suspect is "in custody" including:

> (1) whether the officers told the suspect he was under arrest or free to leave;
> (2) the location or physical surroundings of the interrogation;
> (3) the length of the interrogation;
> (4) whether the officers used coercive tactics such as hostile tones of voice, the display of weapons, or physical restraint of the suspect's movement; and

(5) whether the suspect voluntarily submitted to questioning.

Id. at 359-60.

After holding an evidentiary hearing on February 5, 2010, the court makes the following findings of facts:

On August 10, 2005, Special Agent Michael T. Baumgardner and Special Agent James J. Glenn, both of the Federal Bureau of Investigation, ("FBI"), went to defendant's office at 325 N. Washington St., Scranton, Pennsylvania. (Doc. 169, Notes of Testimony, Suppression Hearing at 4). They entered defendant's office, where he was present with two other people. (Id.) The agents identified themselves, presented their credentials and asked to speak with the defendant. (Id.) Defendant asked the agents to wait outside until he finished his discussion/meeting with the others in his office. (Id.) Accordingly, the agents left and waited outside on the street for approximately five minutes. (Id. at 4-5). When the people that defendant was meeting with left the building, the agents reentered and asked to speak with the defendant. (Id. at 5).

The FBI agents then had a discussion with the defendant in his office. The discussion consisted of Agent Baumgardner questioning the defendant. (Id. at 29). Agent Glenn did not take part in the questioning. (Id.) The agents and the defendant were the only people in the defendant's office for the meeting. (Id. at 7).

During the discussion, defendant sat behind his desk, and the two agents sat in chairs on the opposite side of the desk. (Id. at 8). The defendant invited the agents to sit across the desk from him and they complied. (Id. at 33). The defendant was not under arrest at the time, and had not been read his Miranda rights. (Id. at 8). At the time, the defendant

3

was a suspect, and he had not yet been indicted or charged. (Id. at 27). The government did not indict the defendant until approximately two and a half years later. (Id. at 35).

The office contained a large glass window that looked onto the street and a glass door that opened onto the street. (Id. at 8). The street is easily accessible from the office. (Id.) Because of the office's set up, however, the defendant would have to walk around the agents to leave the office. (Id. at 26). The meeting, which lasted approximately eighteen minutes from 11:00 a.m. until 11:18 a.m, was held in a conversational tone. (Id. at 9, 19).

Toward the end of the interrogation, Agent Baumgardner informed the defendant that a search warrant existed for the premises, and it was going to be executed. (Id. at 18). He informed the defendant that he was free to leave the premises or remain inside while the search was conducted. (Id. at 18). Defendant remained in the office for approximately the first ten minutes of the search, and then he left. (Id. at 18, 20). The defendant returned to the office at approximately 1:15 p.m. (Id. at 22). At that point defendant answered several more questions. He indicated that an audio tape recorder and audio cassette tape found in the office were his. (Id. at 22-23). He further indicated that he did not know the contents of the audio cassette tape. (Id. at 37). He then stated that he was represented by an attorney who told him not to speak anymore. (Id. at 23). After that statement, the agents stopped questioning the defendant. (Id. at 23, 38).

Based upon these facts, and applying the factors set forth above, we find that the defendant was not in custody when questioned by the FBI on

4

August 10, 2005. The physical surroundings consisted of the defendant's own office where he had access to doors to leave. The length of the primary interrogation was relatively short, eighteen minutes. No evidence indicates that the agents used coercive methods, raised voices, displayed weapons or used physical restraints. The evidence indicates that the defendant voluntarily submitted to the questioning. When the agents first arrived they identified themselves and left when the defendant indicated he wanted to finish with the people he was speaking to. They sat in the defendant's office. In fact, the defendant did leave, once the search of the premises began. The agents never told the defendant that he was under arrest and, in fact, he was not indicted for more than two years after this encounter. Accordingly, the government did not subject the defendant to a custodial interrogation at any time on August 10, 2005. No basis exists for suppressing the statements made by the defendant during his encounter with the FBI on that day. The defendant's motion to suppress will be denied. An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | No. 3:08cr221 |
| **v.** | : | (Judge Munley) |
| **JOSEPH P. DONAHUE, Defendant** | : | |

## **ORDER**

**AND NOW**, to wit, this 11th day of February 2010, the defendant's motion to suppress statements (Doc. 128) is hereby **DENIED**.

**BY THE COURT:**

**s/ James M. Munley
JUDGE JAMES M. MUNLEY
United States District Court**