## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **No. 3:08cr221** |
| | : | **No. 3:13cv2464** |
| **v.** | : | **(Judge Munley)** |
| | : | |
| **JOSEPH P. DONAHUE,** | : | |
| **Defendant** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### MEMORANDUM

Before the court for disposition is Defendant Joseph P. Donahue's motion filed pursuant to 28 U.S.C. § 2255.  The matter has been fully briefed, and for the following reasons, it will be denied.

**Background**

On January 6, 2010, the United States of America (hereinafter "government") filed a sixteen-count Second Superseding Indictment against Defendant Joseph P. Donahue (hereinafter "defendant").  (Doc. 138).[1] The indictment contains charges of bank fraud, 18 U.S.C. § 1344; access device fraud (credit card fraud), 18 U.S.C. §§ 1029(a)(2), 1029 (b)(1) and 1029(b)(2); false statements to the government, 18 U.S.C. § 1001; and money laundering, 18 U.S.C. § 1956(a)(1)(A).  Basically, the

---

[1]The government filed the initial indictment on May 28, 2008.  (Doc. 1).

government contends that the defendant solicited people to join in business ventures with him and then used their personal information to obtain credit cards for his own personal use.  Defendant's position was that the alleged victims were willing business partners in businesses that went bad and that he was being prosecuted merely because the government's attorney had a vendetta against him.

After a ten-day trial that commenced on February 17, 2010, a jury returned a verdict of guilty on all counts.  (Doc. 199).  The defendant then filed a motion for judgment of acquittal that raised several issues.  The court denied the motion on September 15, 2010.  (Doc. 250).

The court scheduled sentencing for September 15, 2010.  (Doc. 243).  On the eve of sentencing, however, the court granted leave to the defendant to file supplemental post-trial motions based upon newly discovered evidence regarding the actions of an FBI agent during the case. On October 1, 2010, defendant filed a second supplemental motion for judgment of acquittal and new trial, raising the issue of the agent's actions. The court held a hearing on the motions on October 4, 2010.  The court issued a memorandum and order denying the defendant's supplemental motions for new trial and judgment of acquittal on October 22, 2010.  (Doc.

2

270).

On December 2, 2010, the court sentenced the defendant to a term of 121 months imprisonment followed by 5 years of supervised release. (Doc. 283, Criminal Jdgmt.).  The court also ordered that defendant pay a special assessment of $1,600.00 and restitution of $325,414.67.  (Id.)

The defendant appealed his judgment of sentence to the Third Circuit Court of Appeals on December 10, 2010.  (Doc. 288).  The Third Circuit affirmed the judgment of conviction on January 30, 2012.  United States v. Donahue, 460 F. App'x 141 (3d Cir. 2012).  The defendant then filed a petition for a writ of certiorari with the United States Supreme Court.  The Court denied the petition on October 1, 2012.  Donahue v. U.S., 133 S. Ct. 184 (2012).

On September 26, 2013, defendant filed the instant motion pursuant to 28 U.S.C. § 2255.  (Doc. 314).  He filed a supplement to the motion on January 14, 2012.  (Doc. 322).  The government filed a brief in opposition to the motion on February 11, 2014, and the defendant filed his reply brief on February 25, 2014.  (Docs. 327 & 328).  The defendant filed a second reply brief on May 15, 2014.  (Doc. 334).  The matter is thus ripe for disposition.

3

Defendant filed the instant motion on his own behalf, *pro se*.  A prisoner's *pro se* pleading is construed liberally.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*); Huertas v. Galaxy Asset Mgmt., 641 F.3d 28, 32 (3d Cir. 2011).  We have kept this precept in mind as we have reviewed defendant's motion and briefs.

**Standard of review**

A federal prisoner in custody under the sentence of a federal court may, within one year from when the judgment becomes final,[2] move the sentencing court to "vacate, set aside, or correct" a sentence "imposed in violation of the Constitution or laws of the United States."  28 U.S.C. § 2255(a).  A section 2255 motion may attack a federal prisoner's sentence on any of the following grounds: "[1] that the judgment was rendered without jurisdiction, or [2] that the sentence imposed was not authorized by law or otherwise open to collateral attack, or [3] that there has been such a

---

[2]The Antiterrorism and Effective Death Penalty Act of 1996 establishes a one-year statute of limitations period for section 2255 motions.  28 U.S.C. § 2255(f).  That period generally runs from "the date on which the judgment of conviction becomes final." Id.  A petitioner's judgment becomes "final" when the Supreme Court "affirms a conviction on the merits on direct review or denies a petition for writ of certiorari, or when the time for file a certiorari petition expires."  Clay v. United States, 537 U.S. 522, 527 (2003).

denial or infringement of the Constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack . . . . " 28 U.S.C. § 2255(b).

Section 2255, however, does not afford a remedy for all errors that may have been made at trial or sentencing.  United States v. Essig, 10 F.3d 968, 977 n.25 (3d Cir. 1993).  Rather, section 2255 permits relief for an error of law or fact constituting a "fundamental defect which inherently results in a complete miscarriage of justice."  United States v. Eakman, 378 F.3d 294, 298 (3d Cir. 2004) (citing United States v. Addonizio, 442 U.S. 178, 185 (1979)).  If the court determines that the sentence was not authorized by law, was unconstitutional, or otherwise open to collateral attack, the court must either vacate the judgment, resentence the prisoner, or grant the prisoner a new trial as appropriate.  See 28 U.S.C. § 2255(b). Conversely, a court may dismiss a section 2255 motion where the record shows conclusively that the movant is not entitled to relief.  United States v. Nahodil, 36 F.3d 323, 326 (3d Cir. 1994).

Defendant also seeks a hearing on his motion.  A movant is entitled to an evidentiary hearing as to the merits of his claim unless it is clear that

he is not entitled to relief.  28 U.S.C. § 2255(b).[3]  Based upon our analysis

below, the defendant clearly is not entitled to relief, therefore, no

evidentiary hearing is necessary.

**Discussion**

The defendant's section 2255 motion raises the following issues: 1)

the government violated his rights by failing to disclose exculpatory

evidence; 2) the government engaged in prosecutorial misconduct and

thus violated defendant's due process rights; 3) trial counsel rendered

ineffective assistance of counsel in litigating defendant's issue involving

exculpatory evidence; 4) trial counsel rendered ineffective assistance of

counsel in litigating defendant's case at trial and 5) trial counsel rendered

ineffective assistance of counsel in litigating defendant's sentencing

issues.  We will address these issues in turn.

**1.  Failure to disclose exculpatory evidence**

---

[3]Section 2255 specifically provides as follows:
> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

28 U.S.C. § 2255(b)

Defendant frames his first issue as a constitutional due process violation resulting from the government's failure to disclose exculpatory evidence. The issue involves the actions of the FBI agent who led the criminal investigation of the defendant, Special Agent Michael Baumgardner. Despite defendant's attempt to present this issue as a new matter, it has been raised before. We described the facts surrounding this issue in our opinion regarding the defendant's supplemental motions for judgment of acquittal and new trial as follows:

> First, the defendant raises issues regarding the actions of . . . Baumgardner, who was involved in the investigation of the case. Defendant indicates that he learned after the trial concluded that the government suspected that Baumgardner's testimony at the suppression hearing held in this matter may have been perjury .
>
> .    .    .
>
> At the suppression hearing in this matter, Agent Baumgardner testified about an interview with the defendant at the defendant's office. The answers defendant provided in this interview led to the false statement charge against the defendant found in Count 14 of the Second Superseding Indictment.
> Baumgardner indicated that during the interview, he told the defendant that Assistant United States Attorney Gordon Zubrod would be handling the prosecution. The perjury issue is whether at the meeting Baumgardner also used

7

words to the effect that "Gordon Zubrod says, 'Hello.'" At the suppression hearing when asked if he had said this to the defendant, Baumgardner replied: "I don't recall that statement, no." (Doc. 169, N.T. Suppression hearing at 28). Evidently, the prosecuting attorney had concerns that Baumgardner had in fact made the statement to the defendant.

At trial, Baumgardner was not asked specifically whether he said those words, although he testified that during the interview with the defendant he indicated to defendant that Gordon Zubrod would be the prosecuting attorney. Baumgardner's trial testimony mainly recounted the facts set forth in the report he made of his interview with the defendant. (Doc. 232, N.T. 2/24/10 at 119). After Baumgardner's testimony, Special Agent James J. Glenn testified. He had also been at the interview of Defendant Donahue. (Doc. 223, N.T. 3/01/10 at 5). He indicated that the written report of the meeting was accurate, except it had one omission. (Id. at 6). The one omission is that Baumgardner had stated during the interview that "Gordon Zubrod says, 'Hello'." (Id. at 6).

As explained above, Agent Baumgardner's trial testimony mainly involved the fact that Defendant Donahue made statements during an interview with FBI agents in August 2005. Baumgardner's trial testimony recounted the fact set forth in the report he made of this interview with the defendant. (Doc. 232, N.T. 2/24/10 at 119).

(Doc. 270, Mem. of Oct. 22, 2010 at 3, 5-6).

As noted above, defendant's supplemental motions for judgment of acquittal and new trial raised this issue. The defendant asserted that the government's failure to reveal during the trial that the Assistant United

8

States Attorney may have committed perjury amounted to a wrongful

withholding of exculpatory evidence under <u>Brady v. Maryland</u>, 373 U.S. 83,

87 (1963) (holding that "suppression by the prosecution of evidence

favorable to an accused upon request violates due process where the

evidence is material either to guilt or to punishment, irrespective of the

good faith or bad faith of the prosecution.").  We found no merit to the

issue.  Defendant filed a motion for reconsideration which we denied.

(Docs. 271 & 272).  Defendant appealed to the Third Circuit Court of

Appeals.  The Third Circuit affirmed our decision and held that no <u>Brady</u>

violation had occurred.  "Even if the information sought by [Defendant] had

been disclosed during trial, this information could not reasonably be taken

to put the whole case in such a different light as to undermine confidence

in the verdict."  <u>United States v. Donahue</u>, 460 F. App'x at 144.

Additionally, the Third Circuit explained: "Donahue argues vociferously that

he was entitled to know immediately about [the Assistant United States

Attorney's] concerns related to Baumgardner's truthfulness and

Baumgardner's response to his removal from the case, such information

was immaterial because the result of this case would not have been

different even if we assume (without deciding) that this information should

have been disclosed."  Id.

Presently, defendant merely raises the same issues as he has

previously.  Defendant, however, cannot now re-litigate this issue because

a section 2255 motion may not be used to re-litigate matters that have

been considered on direct appeal.  United States v. DeRewal, 10 F.3d 100,

105 n.5 (3d Cir. 1993).

Defendant also previously argued-in the supplemental motions for

judgment of acquittal and new trial and on appeal-that aside from the

"Hello" statement, portions of Baumgardner's trial testimony may have

been perjury.  After a hearing and extensive briefing by the parties, we

found that this argument was not compelling.  The Third Circuit Court of

Appeals also rejected this claim, indicating that "there is no evidence to

support this argument."  Id. at n.4.[4]  Despite defendant's vociferous

arguments to the contrary, the evidence has not changed since the

defendant's appeal.

As noted above, a section 2255 motion may not be used to re-litigate

matters that have been considered on direct appeal.  Accordingly, the

---

[4]In full, the Third Circuit opinion states: "Donahue also argues that
the communications related to Baumgardner's testimony may refer to other
statements which constitute perjury, but there is no evidence to support
this argument.  United States v. Donahue, 460 F. App'x at 144.

10

defendant's argument will be denied.

In an attempt to get this matter heard again, plaintiff asserts that his claim is based upon newly discovered evidence.   He states: "<u>To be clear . . . the evidence related to Baumgardner's testimony is newly discovered.</u>" (Doc. 328, Def. Resp. at 9) (emphasis in original).  Defendant cites to nothing in the record to support this emphatic statement and establish what this *new* evidence is.  He merely cites to evidence that has been in the case for years and makes the same arguments he has unsuccessfully pursued over and over again.

The evidence that defendant cites to-that has been in the case for years-is the affidavit of Supervisory Senior Resident Agent Kevin L. Wevodau.[5] The affidavit states that the agent "became aware that there was a concern on the part of the Assistant United States Attorney (AUSA) Gordon Zubrod that Special Agent (SA) Michael T. Baumgardner had committed perjury or was in the process of committing perjury in the ongoing trial of Joseph Donahue."  (Doc. 323 at 92, Wevodau Aff.).

---

[5]For example, besides raising these issues in his supplemental motions of acquittal and new trial (Doc. 251), the issues were also raised and briefed before the Third Circuit Court of Appeals.  <u>See</u>, Third Circuit Docket No. 10-4634, Document 003110537249, Defendant's Brief on Appeal, at 17-23.

Thus, Wevodau was "aware" of a "concern" that the agent had committed perjury or was in the process of committing perjury.  From this statement, Donahue concludes that perjury occurred in his trial.  The statement, however, does not establish that perjury occurred.  It establishes that Wevodau became aware that the AUSA was concerned that the agent had or was in the process of committing perjury.   Notably, the affidavit **does not state** that he became aware that the agent **had committed perjury**, which is the manner in which defendant interprets the affidavit and the manner in which he would have us interpret the affidavit.

Despite the affidavit's plain language, the defendant makes inaccurate statements in his brief to make his arguments appear cogent. For example, he states: "In this case it is admitted in a government affidavit that a key government witness committed perjury  . . .. " (Doc. 328, Def. Resp. at 6).  Defendant cites nothing in the record for this statement.  It can be assumed that he again refers to the Wevodau affidavit, but the Wevodau affidavit does not state that a key government witness committed perjury.

Despite the complete lack of evidence to support the defendant's position, he makes other such statements.  He asserts, "To be certain,

12

although it was certainly not intended to be used for purposes for which it now so crucially serves the petitioner, the affidavit does confirm that AUSA Zubrod knew perfectly well that Baumgardner had committed perjury . . . . " (Id. at 30-31).  Additionally, defendant writes: "Although what the specific false statements were remains unknown due to the prosecutor's refusal to disclose the truth . . . ." (Id. at 6).  In other words, defendant does not know what the truth is, he only knows, without evidence, that the prosecution is not telling the truth.[6]  Such supposition based on defendant's mis-interpretation of the affidavit is not sufficient evidence to grant a section 2255 motion.  In fact, it is not evidence at all.

Notably, defendant's response to the government's brief indicates the "government's insistence [that this issue was addressed on appeal] does not make it so." (Id. at 2).  Defendant would, however, have the court use his "insistence" to "make it so" with regard to his position.  Defendant makes the logical leap from the established fact that the United States Attorney was concerned about the possibility of perjury with regard to the

---

[6]Defendant himself was at the interview of which Baumgardner testified.  Tellingly, although the defendant himself was present at the interview, he does not know in what manner Baumgardner allegedly perjured himself while testifying about it.

13

"hello" statement, to assert that the agent perjured himself at trial.[7]  The

defendant's insistence, however, does not make it so.  Accordingly, to the

extent that the section 2255 motion raises these issues that have already

been raised, it will be denied.[8]

### 2. Prosecutorial misconduct

The next issue that the defendant raises is that the government

violated his due process rights and engaged in prosecutorial misconduct

by, *inter alia*, failing to disclose properly the information about Agent

---

[7]As previously developed in this case, the AUSA was concerned that
the FBI agent may have perjured himself at the suppression hearing with
regard to whether he told the defendant, "Gordon Zubrod says, 'Hello.'" At
trial, the AUSA avoided asking the agent whether such a statement was
made.  The second FBI agent involved, however, took the stand to indicate
that the statement was in fact made.

[8]On May 15, 2014, approximately two and half months after the
instant matter was fully briefed, the defendant filed a second memorandum
in support of his supplement to motion to vacate.  Attached to this
memorandum is an affidavit from defendant's trial counsel.  The affidavit
adds nothing to defendant's arguments.  It may indicate that Agent
Baumgardner had two breakdowns, one on the afternoon of his trial
testimony and then again on the next morning when trial was not held-or it
may indicate that the FBI's affidavit is poorly worded.  (Doc. 334, at 8-9,
Philip D. Lauer, Esq., Aff.).   Regardless, whether the agent had one
breakdown or two is of no consequence to the defendant's arguments.  In
no way does the affidavit reveal facts that cast the verdict in this case in
question.  It does not, as asserted by the defendant, establish that the
Assistant United States Attorney and the FBI conspired to commit a fraud
on the court.

Baumgardner.  After a careful review, we find no merit to the defendant's

contentions.

To prevail on a section 2255 motion based upon prosecutorial

misconduct, the defendant must demonstrate that the misconduct "so

infected the trial with unfairness as to make the resulting conviction a

denial of due process."  Darden v. Wainwright, 477 U.S. 168, 181 (1986)

(internal quotation marks and citation omitted).

The prosecutorial misconduct issue raised in defendant's

"Supplement to Motion to Vacate" rests  basically on the same ground as

the issue discussed in the previous section, that is, that the government

should have immediately disclosed the alleged "perjury" that had been

committed.  Defendant argues that the prosecuting attorney violated the

Pennsylvania Disciplinary rules, which in turn impinged on his rights.

Defendant further argues that here the prosecution violated his due

process rights, which is completely independent from his Brady rights.

While defendant may be correct in that due process rights are

generally separate and distinct from  Brady rights, his assertion that his

due process rights were violated is based upon the same facts and

circumstances surrounding his Brady claim.  As noted above, the Third

15

Circuit Court of Appeals denied the Brady claim.  Thus, this portion of the defendant's motion lacks merit.

Additionally, in his original motion and in his response to the government's brief, the defendant touches on several other areas of prosecutorial misconduct.[9]  He alleges that the Assistant United States Attorney engaged in prosecutorial misconduct by: 1) withholding witness interview reports; 2) failing to disclose perjury; 3) deceiving the court; and 4) committing perjury himself.

We discussed the witness reports issue in our memorandum regarding defendants supplemental motions for judgment of acquittal and new trial. (Doc. 270, Mem. of Oct. 22, 2010 at 14).  At the hearing on the witness reports/the motions for judgment of acquittal and new trial, the testimony indicated that witness reports that the government did not turn over to the defendant involved wrongdoing by the defendant that fell outside of the charges in the Second Superseding Indictment.  (Id. at 14). Stated differently, these witness reports were not related to the charges within the Second Superseding Indictment.  As such, they were not relevant to the defendant's charges, and this issue lacks merit.

---

[9]Defendant's different briefs emphasize or develop different arguments.

16

Furthermore, we find that the defendant has not alleged that the prosecutor's conduct so infected the trial with unfairness as to make the defendant's conviction a denial of due process.  Thus, defendant is not entitled to relief on the basis of prosecutorial misconduct.

## 3.  Ineffectiveness - <u>Brady</u> issue

Defendant next claims that had trial counsel pursued the perjury allegation and Baumgardner's conduct with the appropriate degree of advocacy and professional attention then the court would have concluded that a new trial was warranted.  After a careful review, we find that defendant has not established ineffectiveness of counsel with regard to this issue.

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to counsel.  The United States Supreme Court has found that "' the right to counsel is the right to the effective assistance of counsel.'" <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984) (quoting <u>McMann v. Richardson</u>, 397 U.S. 759, 771, n.14 (1970)).  Counsel is ineffective when "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." <u>Strickland</u>, 466 U.S. at 686.

17

Thus, under Strickland, to prove that his counsel was deficient at trial or sentencing, a defendant must convince the court of two factors, deficient performance by counsel and prejudice from that deficient performance. "First, the defendant must show that counsel's performance was deficient." Id. at 687.  Satisfying the first factor, deficient performance, requires a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id.  Substandard lawyering is not enough to obtain relief.  In assessing an attorney's performance, courts apply a highly deferential level of scrutiny.  See Marshall v. Cathel, 428 F.3d 452, 462 (3d Cir. 2005) (quoting Strickland, 466 U.S. at 689).  This deference is afforded because "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Strickland, 466 U.S. at 690.

To satisfy the second factor of the Strickland test, "the defendant must show that the deficient performance prejudiced the defense" by demonstrating that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Id.  In other words, "the party claiming ineffective assistance 'must show that there is a

18

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Campbell v. Burris, 515 F.3d 172, 184 (3d Cir. 2008) (quoting Strickland, 422 U.S. at 694). "'It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceedings . . . not every error that conceivably could have influenced the outcome undermines the reliability of the proceeding.'" Id. (quoting Strickland, 466 U.S. at 693).

Relief under section 2255 for ineffectiveness of counsel is only available to defendants who make adequate showings with respect to both factors of the Strickland test.  See Strickland, 466 U.S. at 686. Accordingly, "'to merit a hearing, a claim for ineffective assistance of counsel, accepting the veracity of its allegations, must satisfy both prongs of the Strickland test, deficient counsel and prejudice to the defense.'" Campbell, 515 F.3d at 183 (quoting Wells v. Petsock, 941 F.2d 253, 559-60 (3d Cir. 1991)).

Here, the defendant fails to establish prejudice.  As previously discussed, defendant's Brady claim regarding Baumgardner's testimony has no merit. The fact that it had no merit would not have changed if counsel had pursued the claim more vigorously.  As noted by the Court of

19

Appeals, "[N]o Brady violation occurred.  United States v. Donahue, 460 F.

App'x at 144.  We therefore will deny this claim of ineffectiveness of

counsel.

**4.  Ineffectiveness - failure to interview witnesses**

Defendant also asserts that trial counsel rendered ineffective

assistance of counsel in that he failed to interview witnesses who would

have materially benefitted his defense.  After a careful review, we find no

merit to defendant's claim.

To pursue an ineffectiveness claim based upon failure to call

witnesses, the defendant must present more than mere speculation as to

the testimony of a witness. Rather, the defendant must establish that the

witness's testimony would have been both material and favorable to him.

Collins v. Meyers, 77 F. App'x 563, 565-66 (3d Cir. 2003) (citing United

States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989)); United States v.

Valenzuela-Bernal, 458 U.S. 858, 867 (1982).  Defendant has not met this

standard.

Defendant generally argues that additional witnesses/investigation

could have supported his defense that the charged conduct regarding his

businesses was not criminal.  According to the defendant, he merely tried

20

to start up businesses.  The businesses did not succeed.  The businesses failed, however, not because of fraud or the fact that he used the personal information of his "business partners" to obtain credit for his own personal use.  Rather, the businesses failed for other reasons.  This defense was presented and rejected by the jury at trial.  Moreover, the witnesses defendant discusses by name in his motion and briefs actually testified at his trial, and they were, in fact, the government's victim/witnesses.  Thus, counsel was not ineffective.

Additionally, defendant's briefing discusses counsel's failure to investigate.  As set forth above, the failure to call witnesses argument is without merit.  Likewise, defendant's failure to investigate claim lacks merit. "[A]n attorney must investigate a case, when he has cause to do so, in order to provide minimally competent professional representation."  United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997).  Here, we find no prejudicial lack of investigation on the part of counsel.

Defendant raises several bits and pieces of evidence that go toward issues that were in some manner addressed at trial.  The evidence that defendant seeks is, for example, evidence that witness/victim Scott Carey made threats against the defendant, evidence regarding the course of

21

dealings of one of the defendant's businesses, Clear Channel with Gary Aniska, another witness/victim and unspecified evidence of the course of dealings between the defendant and two more witness/victims, Thomas Sheets and David Zackey.

Based upon counsel's performance at trial, it cannot be found that he failed to properly investigate and present evidence.  His questioning of the witnesses, including those whom the defendant discusses in this section of the motion, indicates that he had a full comprehension of the facts of the case and the defense that defendant sought to pursue.  Trial counsel did an exemplary job of presenting the case to the jury.  Counsel provided the defense that defendant asserts that he sought.  The fact that the jury did not accept the defense was not due to ineffective lawyering or lack of evidence.

Accordingly, we find no merit to defendant's claim that the defendant rendered ineffective assistance of counsel in failing to interview witnesses/investigate.  This issue does not provide grounds for section 2255 relief.

## 5.  Sentencing Issues

The final area that the defendant discusses is the sentencing

procedure.  To assist the court in arriving at an appropriate sentence, the

probation office prepared a Presentence Investigative Report (hereinafter

"PSR").  In the PSR, the probation office determined the defendant's

Sentencing Guideline range.  In calculating the appropriate Guideline

range, the probation office determined the total of defendant's offense level

points.  They added points for various reasons.  With regard to determining

his sentencing guideline range, the defendant asserts that his counsel was

ineffective.  Counsel ineffectiveness, according to the defendant includes:

1) failing to adequately contest the amount of loss; 2) failing to argue that

fewer than ten (10) victims were involved; 3) failing to ensure that a two

level reduction be provided for his "role in the offense"; 4) failing to

adequately contest a two-point enhancement for obstruction of justice; and

5) failing to establish that defendant was not on probation while committing

the offenses.

Preliminarily, the government argues that these sentencing claims

are not cognizable in a section 2255 motion at all.  The law provides that a

section 2255 motion challenges the constitutionality of a defendant's

sentence.  "Barring extraordinary circumstances . . . an error in the

application of the Sentencing Guidelines cannot be raised in a § 2255

proceeding." United States v. Pregent, 190 F.3d 279, 283-84 (4th Cir. 1999).   The Pregent court explains that if a sentence is in excess of the maximum authorized by law, then section 2255 may be used to challenge it. Id. at 284.  If, however, the defendant merely alleges errors in the application of the Sentencing Guidelines, then section 2255 is inapplicable. Id. Here, defendant does not argue that his sentence is in excess of the statutory maximum, and he challenges merely the application of the Sentencing Guidelines.  Thus, according to the government, he cannot assert these sentencing issues in a section 2255 motion.  After a careful review, we generally agree with the government that such matters are typically not proper for a section 2255 motion.  Nonetheless, we will address the issues that defendant raises.

The Third Circuit Court of Appeals has noted that the misapplication of the Sentencing Guidelines does not automatically give rise to a constitutional claim.  See, e.g., United States v. Cepero, 224 F.3d 256 (3d Cir. 2000).  In such cases, the Third Circuit reviews the issues to determine if the defendant raises issues of constitutionality or whether the defendant merely argues that the sentence violates the sentencing guidelines.  United States v. Manigault, 395 F. App'x 831, 834 (3d Cir. 2010).  Relevant may

be whether the defendant is sentenced within the proposed guideline range and whether the sentence exceeds the statutory maximum.  Id.  In the instant case, no one argues that the sentence exceeds the statutory maximum.

The defendant, however, asserts that the appropriate guideline range should have been 30 to 37 months rather than 121 to 151 months as calculated in the PSR.  A large gap exists between the sentencing range that the defendant advocates and the range that the PSR provides.  Defendant was not sentenced within the range that he now suggests is appropriate.  The assertion that the PSR guideline range was substantially higher than it should have been may be the type of extraordinary circumstances that would allow a defendant to raise a guideline issue in a 2255 motion.  See, e.g., United States v. Talk, 158 F.3d 1064, 1069 (10th Cir. 1998) (assuming without deciding that a guideline error of approximately 50 months is cognizable under section 2255).  Accordingly, we will address the issues that defendant raises with regard to his sentencing.

The probation office determined the defendant's Sentencing Guideline range. The range was increased six (6) levels due to the amount

of loss, two (2) levels because of defendant's role in the offense; and two (2) levels because of the number of victims.  Defendant claims that these additions should not have been made and trial counsel was ineffective in addressing these issues.  We disagree, but we will discuss each in turn.

## A. Amount of loss

The PSR indicates that the defendant's offense involved a loss of more than $400,000 but not more than $1,000,000.  Fourteen levels were added to the defendant's Offense Level due to this amount of loss pursuant to United States Sentencing Guideline ("U.S.S.G.") § 2B1.1(b)(2)(A).  (PSR at ¶ 66).  Defendant argues that the amount of loss was actually well below $400,000.

Defendant focuses his "amount of loss" argument on one particular victim, Stephen Kelly.  He argues that the government indicated that the amount of loss was based only on the credit cards and loans of which the investors were completely unaware.[10]  Kelly was aware of the purchases

---

[10]Defendant indicates that Agent Phillips testified to this fact at the sentencing hearing.  Actually, the page number to which the defendant cites demonstrates that the United States Attorney made this statement to the court as an introduction to Phillips' testimony, as such, it was not evidence from Phillips.  Phillips testified that they calculated the loss with regard to Kelly based on credit card accounts that were involved in Kelly's bankruptcy.  The statements for these accounts were found in the

made with his credit, therefore, Kelly's losses should not be included in the amount of loss.

Defendant couches all of these claims in terms of ineffectiveness of counsel.  As noted above, the first element that must be established for an ineffectiveness claim is that counsel's performance was deficient.  With regard to the amount of loss, defendant has not established that counsel was in any way deficient.

Trial counsel raised an objection to the PSR with regard to the amount of loss and argued that Kelly agreed to the use of the credit cards at issue and agreed to the use of his credit in the business.  (Def. Objections to the PSR at 4).  Further, he cross-examined the FBI Agent regarding the amount at the sentencing hearing.  (Doc. 287, Sentencing Tr. at 26-27).  The court rejected this argument.  Merely because the court disagreed with the objection raised, developed and argued by the defense counsel, does not mean that counsel was ineffective.  In this instance, it merely signifies that the issue lacked merit.  Accordingly, we reject defendant's argument that his counsel was ineffective with regard to this issue.

---

defendant's office.  (Doc. 287, Sentencing Tr. at 26-27).

## B.  Number of victims

The probation office added two points to the defendant's Offense Level because the offense involved ten (10) or more victims pursuant to U. S.S.G. § 2B.1(b)(1)(H).  Defendant asserts that fewer than ten victims are involved and if counsel had adequately investigated the facts he would have confirmed that the number was less than ten.  We are unconvinced by the defendant's argument.

The defendant argues that the victims were only the banks involved rather than the individuals.  In fact, defendant argues that the individuals whom he stole the identities of or otherwise defrauded were not victims at all and "[i]n reality the promise of being able to use a Donahue conviction to have all related debt wrongfully forgiven, enabled the individuals to have all negative credit marks removed from their credit reports in return for their cooperation[.]" (Doc. 328, Def.'s Resp. Br. at 18).  Thus, because the individuals allegedly "benefitted" from the defendant's conviction, they are not victims.  The defendant's argument is not cogent.  The defendant himself put the individuals in the position of needing their credit restored. No question exists but that they were victims of the defendant's actions.

The pertinent information regarding the number of victims can be

found in the "Victim Impact Statement" of the PSR. It indicates restitution

due to the following eleven victims: David Zackey, Steven Propora, Robert

Weir, Chase One, American Express, M&T Bank, Citibank, Bank of

America, Steven Peters, Capital One and Stephen Kelly  (P.S.R. ¶ 55).

Clearly, ten or more victims were involved.[11]  Defendant's position lacks

merit, therefore, his counsel is not ineffective for failing to raise the issue.

The defendant argues that the banks were the only victims according

to the PSR and the United States Attorney's statements at sentencing.  In

support of his position, defendant picks a portion of the sentencing

transcript and twists it to fit his argument.  At the sentencing, the United

States Attorney stated: "It is the banks that suffered the loss, and we are

prepared to put on an agent, as is our responsibility - - to put on the agent

to establish what each bank lost."  (N.T. at 15-16).  Based on this

statement the defendant asserts that only the banks were victims based on

the government's own admission.  Defendant fails to note that the issue

during *that portion* of the sentencing hearing was not the number of

---

[11]The criminal judgment ordered restitution be paid to all of these
victims, except for Steven Peters.  (Doc. 283).  Thus, even if we determine
the number of victims based solely on the restitution computation, ten
would be involved and the increase in Offense Level points for ten or more
victims would be appropriate.

victims, but the amount of loss.  In determining the amount of loss for the

bank fraud defendant committed, the loss of each bank was the relevant

amount.  This fact does not mean that no individual victims existed.

The term "victim" is defined in the commentary to the Sentencing

Guidelines as "any person who sustained any part of the actual loss . . . . "

U.S.S.G. § 2B1.1(b)(2), cmt. n. 1; *cited in* United States v. Kennedy, 554

F.3d 415, 419 (3d Cir. 2009).  The PSR clearly sets forth the individual

victims and the amount of loss to each.  (PSR ¶ 55).  Further, at the

sentencing hearing, where defendant claims the government was only

interested in the banks as victims, the individual victim Steve Kelly was

discussed at length.  Thus, we find no merit to the defendant's claim that

counsel was ineffective for failing to argue that there were fewer than ten

victims.  The defendant's claim lacks merit.

### C.  Role in the Offense

The probation office added two points to the defendant's Offense

Level for his role in the offense. (PSR at ¶ 70).  The PSR explains, "Joseph

Donahue abused the authority of his position with business partners,

shareholders, and investors to obtain or use without authority to [sic]

means of identification to open credit card accounts and obtain loans and

30

lines of credit.  Pursuant to U.S.S.G § 3B1.3, the offense level is increased

by two levels."  Id.  These two levels are included in the PSR and the

computation of the defendant's Offense Level.

At the sentencing hearing, however, the court heard argument on this

issue, the government attorney opined that an increase based on

defendant's "role in the offense" was appropriate.  He, however, "objected"

to the PSR apparently unaware that the two level increase was, in fact,

included.

After hearing the argument from the government and defense, the

court denied the government's "objection" and ruled that the two-level

increase should not be made (Doc. 287, Sentencing Tr. at 34).

Regardless, the two points remained in the calculation and helped to lead

to the guideline range of 121 to 151 months.   The government concedes

that this failure to deduct the two points was an error.  It points out that the

correct guideline range is 100 to 125 months.  (Doc. 327, Gov't Br. at 48).

Defendant's sentence of 121 months falls within this range.  Because the

defendant's sentence falls within the proper range, the government argues

that the general rule that Sentencing Guideline issues cannot be raised in

a 2255 motion controls.   We agree.  These two points did not greatly effect

the guideline sentencing range.  The defendant's sentence falls within the proper range.  Thus, we find no merit to the defendant's claim.

### D.  Obstruction of justice

The PSR also added two Offense Level points for "Obstruction of Justice."  (PSR ¶ 71).  Defendant argues that these points should not have been added.  We disagree.

The Guidelines provide as follows: "If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense by **2** levels."  U.S.S.G. § 3C1.1.  The PSR, describes the defendant's obstruction of justice as follows: "Joseph P. Donahue willfully attempted to obstruct the administration of justice during the course of the investigation of the instant federal offense.  On August 10, 2005, the defendant provided false statements to law enforcement to impede the prosecution of the instant offense."  (Id. ¶ 58).

Defendant argues that the "obstruction of justice" points were added

inappropriately because he is alleged to have made false statements to Agent Baumgardner "a man who has since been discovered and admitted to have made *false sworn statements* in their [sic] trial testimony which resulted in Donahue's conviction on a charge of false statements to him[.]" First, we note the factual inaccuracy of defendant's statement - as explained above, Baumgardner has not been discovered to have provided false sworn statements in his testimoney despite Donahue's repeated assertions to the contrary.   Second, we note that defendant himself admitted at trial to lying to Agent Baumgardner.  (See, e.g., doc. 224, N.T. Mar. 2, 2010 at 93-94)  Thus, this argument is not convincing.

Next, defendant argues that the points should not have been added because the facts justifying the adding of the points also led to the conviction on Count 14- False Statements.  To add points constitutes a double penalty/punishment for the same conduct according to the defendant.[12]  We disagree, as explained at the sentencing, the court did not add the obstruction of justice points merely for the false statements conviction, but also because the defendant provided false testimony during

---

[12]Defendant also argues that the additional points are inappropriate because the government knew the answers that he provided were fallacious.  We find this argument to be without merit.

the trial.

The law provides that the court may apply the obstruction of justice

enhancement based upon a defendant's trial testimony where the

defendant's testimony meets each element of perjury.  United States v.

Dunnigan, 507 U.S. 87, 95 (1993).  These elements are met where the

defendant provides false testimony concerning a material matter with willful

intent to provide false testimony.  Id.  The sentencing court should make a

finding of all the factual predicates for a finding of perjury.  Id.  Here at the

sentencing, the court did just that.  At sentencing, the court the addressed

these points as follows:

> This case we find by clear and convincing
> evidence that [defendant] falsely testified during trial
> and that his testimony was wilful and his testimony
> concerned material matters.  Evidence at trial
> established he provided false statements to agents
> when he was interviewed and specifically - - more
> specifically he testified that he provided - - he
> testified that he provided false statements to law
> enforcement - - the law enforcement on August
> 10th when he was interviewed by the F.B.I.
> . . . [T]he jury finding that he provided false
> statements in violations of 18 U.S.C. Section 1001,
> that was Count 14.  And [defendant] also testified
> that in all the business transactions that he had
> permission of the victims to obtain credit cards and
> loans from financial institutions, and a jury found
> that the defendant had committed the offenses of
> bank fraud, money laundering, unauthorized access

34

device fraud, Count 1 through 13 and 15 of the
superseding indictment.
Further, the - - the fact that [defendant's] false
testimony heard during the trial, and the jury found
that the defendant had provided false statements to
agents in violation of that statute, and obstruction of
justice is warranted[.]

(Doc. 287, Sentencing Transcript at 9-10).

Accordingly, it was appropriate for the court to increase the Offense

Level by two points for the defendant's obstruction of justice.  This issue

lacks merit and defense counsel was not ineffective.  Defendant's claim will

be denied.

### E.  Probation

To determine the Sentencing Guideline range, the probation office

also determined the defendant's "Criminal History Points."  The probation

office added two points to its calculation on the basis that the defendant

committed the offense at issue while on probation.  (PSR ¶ 86).  Defendant

maintains that the term of probation that the court refers to involves a

charge of driving under the influence from August 28, 2009.  The state

court imposed a violation on February 4, 2010, two weeks prior to the trial

and well after all the conduct charged in the Superseding Indictment

occurred.  Thus, according to the defendant, the addition of the two points

was an error.  Defense counsel did not raise this issue at sentencing,

therefore, according to the defendant, counsel was ineffective.  After a careful review, we disagree with the defendant.

The Sentencing Guidelines provide that in determining the defendant's criminal history category, two (2) points should be added "if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status."  U.S.S.G. § 4A1.1(d).

In the instant case, defendant may be correct in that his probation for the driving under the influence offense did not occur during the period covered by the Second Superseding Indictment.  It is undisputed, however, that defendant was convicted in Florida of battery and sentenced on November 8, 2004 to one year of probation.  (PSR ¶ 79).  Thus between November 8, 2004 and November 7, 2005 defendant served probation for the Florida battery offense.

The Second Superseding Indictment charged defendant with crimes spanning January 31, 2004 through January 6, 2010.  (Doc. 138, Superseding Indictment ¶ 9).  Defendant's Florida probation sentence from November 2004 to November 2005 falls within this time frame.  Moreover, Count 15 of the Superseding Indictment specifically involves false

statements defendant made in August 2005, while he was on probation. The Commentary to Guideline § 4A1.1 indicates that the points should be added if the "defendant committed *any part* of the instant offense" while on probation.  (Commentary U.S.S.G. § 4A1.1 (emphasis added)).  Here, the record indicates that defendant did so.  We find no error in adding in the two points.

Defendant argues that the Guideline does not apply to non-supervisory probationary periods.  Evidently, defendant argues that Florida authorities imposed non-supervisory probation, and therefore, it does not fall under § 4A1.1.  We disagree.  The Commentary to the Guideline provides: "a term of unsupervised probation would be included[.]" Accordingly, we find no merit to the defendant's argument.

**Conclusion**

In conclusion, defendant's section 2255 motion will be denied.  He had a fair trial where the jury disbelieved his testimony and convicted him of the crimes alleged by the government.  Now he tries to convince the court that the trial was unfair and the verdict was not based upon his own actions as testified to by the winesses/victims at the trial and his own admissions on the stand, but that the verdict was somehow tainted by the

37

unfortunate incident involving the FBI agent handling the case. We disagree.  Defendant is merely trying to utilize the incident to his advantage.  He was not convicted by the FBI agent or the prosecuting attorney.  He was convicted by a jury of his peers, who after hearing all the evidence, including his own testimony, found him guilty as charged.  He was sentenced accordingly.  Defendant has raised no issues that lead the court to conclude that the sentence is in violation of the Constitution or federal law.  Defendant has cited to no fundamental defect which inherently resulted in a complete miscarriage of justice.  Accordingly, the instant motion will be denied.  An appropriate order follows.

**Date:** <u>June 23, 2014</u>                    <u>**s/ James M. Munley**</u>
                                            **Judge James M. Munley**
                                            **UNITED STATES DISTRICT COURT**