THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | : |
| | : |
| v. | : 3:08-CR-221 |
| | : (JUDGE MARIANI) |
| **JOSEPH P. DONAHUE,** | : |
| | : |
| **Defendant.** | : |

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

Presently before the Court is Defendant Joseph Donahue's Motion for Early Termination of Supervised Release (Doc. 388), filed approximately 18 months[1] into his 60-month term of supervised release. The parties have fully briefed the motion (Docs. 388, 392, 393) and the motion is ripe for disposition. For the reasons that follow, Defendant's motion will be denied.

### II. ANALYSIS

"[T]he primary purpose of supervised release is to facilitate the integration of offenders back into the community rather than to punish them." *United States v. Murray*, 692 F.3d 273, 280 (3d Cir. 2012) (quoting *United States v. Albertson*, 645 F.3d 191, 197 (3d

---

[1] Defendant asserts that he was released from federal custody on June 20, 2020, over three years ago (*see* Doc. 388, at 1; *see also*, Doc. 393 at 6). Upon consultation with the U.S. Probation Office for the Middle District of Pennsylvania, Donahue was released to home confinement through the Bureau of Prisons ("BOP") in June of 2020, where he remained in the custody of the BOP for the remainder of his sentence of incarceration. Defendant's term of supervised release began when he was released from the custody of the BOP on January 14, 2022.

Cir. 2012)). Congress has thus provided the sentencing court with the authority to terminate a defendant's term of supervised release early. *See Burkey v. Marberry*, 556 F.3d 142, 146 n.3 (3d Cir. 2009) ("Pursuant to 18 U.S.C. § 3583(e), only the sentencing court has the authority to modify [a defendant's] term of supervised release"). Pursuant to 18 U.S.C. § 3583, "[t]he court may, after considering the factors set forth in [18 U.S.C. §] 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) . . . terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). "'The expansive phrases "conduct of the defendant" and "interest of justice" make clear that a district court enjoys discretion to consider a wide range of circumstances when determining whether to grant early termination.'" *United States v. Melvin*, 978 F.3d 49, 53 (3d Cir. 2020) (quoting *United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014)).

The § 3553(a) factors cited in § 3583(e)(1) are as follows:

> (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide him with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentence and sentencing range established for the defendant's crimes; (4) pertinent policy statements issued by the United States Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (6) the need to provide restitution to any victims of the offense.

*Melvin*, 978 F.3d at 53 (quoting *United States v. Davies*, 746 F.App'x 86, 88-89 (3d Cir. 2018)). "[I]t is notable that the only traditional sentencing factor *not* relevant to a court's decision of whether to impose supervised release . . . is the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. . . . This omission reinforces the idea that the primary purpose of supervised release is to facilitate the reentry of offenders into their communities, rather than to inflict punishment." *Murray*, 692 F.3d at 280 (internal quotation marks, citations, and brackets omitted).

When weighing the relevant § 3553(a) factors and considering a defendant's motion for early termination of supervised release, "a district court need not find that an exceptional, extraordinary, new, or unforeseen circumstance warrants early termination of a term of supervised release before granting a motion under 18 U.S.C. § 3583(e)(1)." *Melvin*, 978 F.3d at 53. However, "'*generally*, early termination of supervised release under § 3583(e)(1)' will be proper 'only when the sentencing judge is satisfied that new or unforeseen circumstances' warrant it." *Melvin*, 978 F.3d at 53 (quoting *Davies*, 746 F.App'x at 89) (emphasis in *Melvin*).

In the present case, as summarized by the Third Circuit Court of Appeals in affirming the District Court's judgment of conviction of Defendant Donahue:

3

> On January 6, 2010, a federal grand jury returned a sixteen-count [Second Superseding] indictment[2] charging Donahue with four counts of bank fraud, in violation of 18 U.S.C. § 1344, ten counts of using a credit card with intent to defraud, in violation of 18 U.S.C. § 1029, one count of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A), and one count of false statements, in violation of 18 U.S.C. § 1001. The majority of these charges were based on Donahue's scheme to "enlist and recruit shareholders, investors and partners in various businesses that [he] owned and controlled," obtain credit cards in his victims' names for the purpose of paying the businesses' operating expenses, and then use these approved credit cards for personal expenses and open up new lines of credit in his victims' names without their authorization. . . . Donahue was also charged with knowingly making six false statements to FBI agents upon being questioned about the above activities (Count 14). . . . A unanimous jury subsequently convicted Donahue on all sixteen counts following an eight-day trial that concluded on March 4, 2010. On December 3, 2010, the District Court sentenced Donahue to a term of 121 months of imprisonment and five years of supervised release. The District Court also ordered Donahue to pay $325,414.67 in restitution.

*United States v. Donahue*, 460 F.App'x 141, 141-142 (3d Cir. 2012) (internal citations omitted).

Relevant to the above-captioned action and Donahue's present motion for early termination of his supervised release are Donahue's actions following his sentencing in this case. Although Donahue was ordered to surrender on January 4, 2011, to commence his 121-month term of confinement, he failed to do so and the District Court issued a warrant for his arrest the following day.

> Instead of surrendering, Donahue drove across the country in his son's red Ford Mustang to Las Cruces in an attempt to avoid imprisonment. This attempt came to naught when United States marshals in Scranton, Pennsylvania, in the Middle District of Pennsylvania, became aware that Donahue might be in Las

---

[2] Donahue was first indicted on May 28, 2008 (Doc. 1) and a superseding indictment was returned on March 11, 2009 (Doc. 34).

> Cruces and notified authorities there of that information. Two weeks after Donahue should have surrendered, United States marshals in Las Cruces, assisted by New Mexico State University police, arrested him near the campus when they saw him exit a hotel in which he had registered under an alias and enter his son's Mustang.

*United States v. Donahue*, 764 F.3d 293, 296 (3d Cir. 2014). The U.S. Marshals arrested Donahue and, in subsequent searches of his car, discovered a Glock .40 caliber magazine and a Glock semi-automatic pistol. *Id*. at 297. Following Donahue's apprehension, he was indicted for: failing to surrender for service of a federal sentence (Count I); being a felon in possession of a firearm (Count II); being a fugitive from justice in possession of a firearm (Count III); and being in possession of a stolen firearm (Count IV). (*See* 3:11-cr-33, Doc. 111). On September 1, 2015, Donahue was convicted of all four counts. (*Id*. at Doc. 378). Defendant was sentenced to a total term of imprisonment of 46 months, to be served consecutively to the 121-month sentence imposed in the above-captioned action. (*Id*. at Doc. 420). The Court did not impose any term of supervised release in the case due to the five-year term of supervised release already imposed in the above-captioned case.

Defendant Donahue was released from prison and began his five-year term of supervised release on January 14, 2022. Having now served approximately 18 months of his supervised release term, he moves for early termination of this supervision. Upon consideration of the statutory factors, Defendant's motion will be denied.

Defendant Donahue's present motion asserts that he "has been in full compliance in all areas of supervision, including making monthly payments on his restitution obligation."

(Doc. 388, at 1; *see also, id.* at 4). He further asserts that he is "a 68 year old two time stage 4 cancer survivor in remission" and has undergone "extensive chemotherapy" and radiation that has resulted in "significant side effects." (*Id.* at 4). Finally, Defendant cites his desire to "spend significant time with [all his children], a goal made difficult by the limits imposed by ongoing supervision." (*Id.* at 4-5).

Donahue presents little evidence that "new or unforeseen circumstances" have arisen warranting the early termination of his supervised release.[3] The only "new or unforeseen circumstance" that has arisen since the time of Donahue's sentencing in 2010 is his cancer diagnosis and treatment. However, Defendant's own motion describes the cancer as being in remission and does not assert that he continues to receive treatment due to the prior cancer diagnosis or that he continues to suffer from symptoms related to his prior cancer diagnosis.

Furthermore, recognizing that Donahue has fully complied with the terms of his supervised release, Defendant has simply done what is required of him while on supervised release. Mere compliance with the terms of his supervised release does not entitle him to early termination of his five-year term of supervised release. *See e.g., United States v.*

---

[3] This Court recognizes that the Third Circuit has "disavow[ed] any suggestion that new or unforeseen circumstances *must* be shown", *Melvin*, 978 F.3d at 53 (emphasis added), but it is nonetheless one of a number of factors that this Court should consider in determining the merits of Defendant's motion. *See e.g. id.* ("We think that [g]*enerally*, early termination of supervised release under § 3583(e)(1) will be proper only when the sentencing judge is satisfied that new or unforeseen circumstances warrant it. That is because, if a sentence was 'sufficient, but not greater than necessary' when first pronounced, 18 U.S.C. § 3553(a), we would expect that something will have changed in the interim that would justify an early end to a term of supervised release.") (some internal citations and quotation marks omitted) (emphasis in original).

*Laine*, 404 F.App'x 571, 573-574 (3d Cir. 2010) ("Simple compliance with the conditions of supervised release are expected and not exceptional") *abrogated by United States v. Melvin*, 978 F.3d 49 (3d Cir. 2020); *United States v. Welling*, 2021 WL 409834, *4 (W.D. Pa. 2021) ("Compliance with the conditions of supervision, including refraining from engaging in criminal conduct, is *required* behavior while serving a term of supervised release.") (citing *United States v. Banks*, 2015 WL 926534, at *4 (W.D. Pa. 2015)) (emphasis in original).

Moreover, upon consideration of the nature and circumstances of the fraud and money laundering offenses for which Donahue was convicted, including his participation in a scheme to "enlist and recruit shareholders, investors and partners in various businesses that [he] owned and controlled, obtain credit cards in his victims' names for the purpose of paying the businesses' operating expenses, and then use these approved credit cards for personal expenses and open up new lines of credit in his victims' names without their authorization", *Donahue*, 460 F.App'x at 141, it is not in the interests of justice to terminate Defendant's supervision early. Continued supervised release also provides possible deterrence to further criminal conduct, *i.e.* participation in another scheme to defraud individuals or business entities, and works to aid in the protection of members of the public, to the extent possible. Defendant's compliance with the terms of his supervised release and abstention from further criminal conduct since his release from prison may in fact demonstrate the desired deterrent effect of the supervised release on Defendant to refrain from engaging in further unlawful behavior. *See e.g. United States v. Miles*, 2020 WL

4904019, *3 (W.D. Pa. 2020) ("Indeed, the fact of compliance may very well mean that supervision is serving its deterrent and rehabilitative purposes and continuation of it to full term will achieve its desired effects on the supervised individual and community.").

In addition, Defendant's history and characteristics, and in particular Donahue's repeated demonstrations of dishonest and evasive behavior, weigh against early termination of his supervised release. In the present case, Donahue was, in addition to being convicted of financial crimes, also convicted of making false statements to the FBI. Following the imposition of his sentence, Defendant failed to report to prison and drove to New Mexico where he used an alias to attempt to evade detection. In his present motion and reply brief, Donahue sets forth no acknowledgment of his wrongdoing or acceptance of responsibility, instead repeatedly criticizing the Court's sentence of 121-months[4] and accusing the Government of engaging in vindictive and retaliatory behavior driven by animus for the defendant[5]. These facts all support a finding that Defendant, and the public, are best served by continuing Defendant's supervised release and further aiding him in his rehabilitation.

For these reasons, and upon consideration of each of the relevant statutory factors, the specific facts and circumstances of this case, and the arguments presented in the

---

[4] *See e.g.,* Doc. 388, at 4 (calling the sentence an "extremely onerous term" and arguing that the "incredibly harsh sentence imposed was intentionally punitive"); Doc. 393, at 2 (calling the sentence "absurdly harsh").

[5] *See generally,* Doc. 393.

parties' briefs, the Court finds that the purposes to be served by the imposition of supervised release by the Court have not yet been satisfied at this time. Consideration of the relevant § 3553 factors weigh heavily in favor of requiring Defendant to serve the remaining term of his supervised release. Defendant's motion will therefore be denied.

### III. CONCLUSION

For the foregoing reasons, Defendant Donahue's Motion for Early Termination of Supervised Release (Doc. 388) will be denied. A separate order follows.

_____
Robert D. Mariani
United States District Judge